CHARLES G. MARTIN *et al.*, Respondents, *v.* HATTIE W. BLISS, Appellant.

*Supreme Court, First Department, General Term, May* 24, 1889.

*Brokers. Commissions.*—Where, in an action by a broker for commissions for selling a house, he testified that defendant orally agreed to sell the house for a certain sum, and to pay him commissions on the sale, but defendant denied the agreement, and her testimony was corroborated by two disinterested witnesses; and it further appeared that, on the day after the alleged agreement, the defendant refused to sign a written contract of sale, and thereupon the plaintiff wrote her for a definite answer in regard to the sale, the evidence was held insufficient to establish the agreement and sustain a verdict for plaintiff, and the verdict was set aside and a new trial granted.

Appeal from a judgment entered on a verdict, and from an order denying a motion made upon the minutes for a new trial.

*William J. Martin*, for appellant.

*C. N. Bovee, Jr.*, for respondents.

DANIELS, J.—The action was brought to recover the sum of $600, with interest upon it, as commissions for obtaining a purchaser for premises owned by the defendant, and situated on Thirty-second street in the city of New York. It was alleged in the complaint that the defendant on or about the 12th of May, 1886, had employed the plaintiffs as her brokers, to sell the property for the sum of $50,000, for which she agreed to pay them $600. This was denied by the defendant in her answer, and the disposition of the action depended upon the ability of the plaintiffs to establish the truth of their allegations upon this subject. During the progress of the trial, exceptions were taken to the ruling

of the court, and, also, as to portions of the charge under which the case was submitted to the jury. But these exceptions do not appear to have been well taken. And the disposition of the appeal is consequently left dependent upon the point whether the evidence established the agreement asserted to have been made by the plaintiffs.

The evidence given to support the making of the agreement was derived from the plaintiffs themselves. And it appeared from that evidence that they had been employed by Nathan Bozeman to purchase the property for him. He was willing to buy it for the sum of $50,000. The evidence of the plaintiff, Charles G. Martin, was first taken in the course of the trial, and he stated that the defendant, when he called to see her upon the subject, on the twelfth of May, stated that she had made up her mind to sell the house, if she could get $50,000 for it, but would not take a cent less than that sum.

The other plaintiff testified that he called upon her in the afternoon of the same day, and in the course of an interview had with her upon this subject, that she informed him that she would sell the place to Dr. Bozeman, for this sum of money. That a further conversation took place concerning the commission which should be paid to the plaintiffs in case a sale of the property for this amount took place, and in the course of which she finally promised to give the witness a check for $600 commission, if he sold the place for this sum of $50,000.

His testimony was that he communicated this fact to the purchaser, and on the same day drew a formal contract to carry the agreement into execution. This was presented to° the defendant for her signature, after it had been subscribed by Bozeman, and she refused to sign it, disclaiming having made, or consented to any agreement whatever, for the sale and conveyance of the property. Her evidence directly tended to sustain the position taken .by her in this manner concerning the transaction. And she stated the case as she

said she understood it to be, and that was that she would sell the property to this purchaser, if she concluded to dispose of it for this sum of money. And that while the matter stood in this condition this suit was commenced.

By way of corroborating the evidence in this manner given by the defendant, Louisa McGrath testified that she heard a conversation between the defendant and Mr. Martin when Mr. Bozeman was in the building, in which the defendant stated to Martin, " Well, if I conclude to sell, I will let the coal go in for the same as I bought it for, and I presume the Baltimore heater also." Another witness, Patrick Henry Murphy, examined on behalf of the defendant, testified that he " heard Mrs. Bliss tell Mr. Martin that she would have nothing to do with him, that she hadn't made up her mind to sell the house at all, and if she did made up her mind she would let him know. She had made up her mind to do nothing about it yet. She hadn't thought of selling it." The next day this witness testified that Mr. Martin was there with some paper; that he did not know what it was. And the defendant then said, " Mr. Martin, I will have nothing to do with it. She said I have not agreed to sell the house, and there is no contract with me to sell." These two witnesses appear to have been entirely disinterested, and their evidence directly tended to support that given by the defendant, that she did not agree to sell this house to the person for whom the plaintiff desired to purchase it.

After the interview relied upon by the plaintiffs as establishing the making of the agreement, and the refusal of the defendant to subscribe the written contract for the sale of the property, the plaintiffs wrote a letter to her. This letter is in the following language:

NEW YORK, *May* 14, 1886.

*Mrs. H. W. Bliss, No.* 31 *West Thirty-second street, City:*

DEAR MADAM—We must have a definite answer in regard

to the sale of your property, No. 31 West Thirty-second street, New York city, to Dr. Nathan Bozeman, to-day, by 2 o'clock P. M.

We have the contract signed by Dr. Bozeman for the purchase of the property for $50,000, the time by which you agreed to sell, and his check for the deposit.

We shall be ready to deliver them until 2 o'clock to-day. Please give us a definite answer by that time.

Very respectfully,

MARTIN & BRO.

And it appears to contain the concesssion, on the part of the plaintiffs, that a definite answer had not been given by the defendant to them, for the sale of this property, prior to the time when the letter was written. If it had been, there was neither sense nor propriety in them asking her for a definite answer regarding the sale of the property to the doctor on the day of the date of the letter, by two o'clock in the afternoon. This letter, accordingly, is very decided evidence supporting the view of the transaction which the evidence, on the part of the defendant, had a tendency to maintain.

That which was given by Charles G. Martin established no agreement for the sale of this property to this purchaser, but, at most, tended to express a willingness on the part of the defendant to sell the place for $50,000. But in that interview no reference was made to commissions, and it was stated, according to the relation of it given by the witness, to have been qualified by the expression, on the part of the defendant, that she would not take a cent less than the $50,000 for the house.

As to whether a contract was made by her for the sale of the house to the doctor, and the payment of the $600 commissions, the case depended entirely upon the testimony of William C. Martin, the other plaintiff. And the weight and effect of his evidence, concerning this alleged fact, was.

wholly overcome by the denial of the defendant and the testimony of her two uninterested witnesses, supporting the truth of her denial. This left the oral testimony very slight, indeed, in favor of the plaintiffs, upon the trial, and with the effect of their letter of the 14th of May, 1886, balanced the scale entirely against them. Their case then stood disproved, and the jury, instead of finding a verdict in their favor, should have found it the other way. This was one of the grounds upon which the motion was made upon the minutes to set aside the verdict, and, under the circumstances presented by the case, an order should have been made disposing of the motion in that manner.

The order and the judgment should, therefore, be reversed, with costs to the appellant to abide the event, and an order should be entered setting aside the verdict, on the payment, by the defendant, of the costs of the trial.

VAN BRUNT, Ch. J., and BARTLETT, J., concur.